BLAIR–BAKER HORSE COMPANY *vs.* JAMES HENNESSEY.

JANUARY 21, 1914.

PRESENT:   Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, J.J.

*(1)   Replevin.   Contracts.   Sales.   Rescission.*

After plaintiff had shipped two carloads of horses from I to P in the name of H, the payment of which had been guaranteed by defendant, and while he was preparing to ship a third carload he telegraphed defendant, "*H had good load bought worth the money if you will stand for this load we will make other arrangements too late to do it this load answer quick can bill them to you if you say so.*" Defendant replied, "*You can ship horses in my name.*" Plaintiff telegraphed "*If we ship horses in your name will you guarantee draft answer quick*" to which defendant replied, "*I will guarantee draft.*"

Through some error, the horses were shipped in the name of H, but the mistake was unknown to plaintiff until two weeks later.   H knew that the horses were to be shipped in name of defendant, and believed they were so shipped until they arrived in P.

Before it was known to H or defendant that horses had not been shipped in name of defendant, H at request of defendant, gave him a bill of sale of the horses, which had been delivered on the previous shipments, and also the horses included in the last shipment which had not then been unloaded. No payment was made by defendant to H, and the bill of sale appeared to have been made as security for the guaranty by defendant of the payment for the three shipments.

Thereafter, H paid the charges on the third shipment and turned them over to defendant, who disavowed his guaranty, and plaintiff replevied the horses.

*Held,* that the horses were sold to H and the plan to ship them in name of defendant was to secure him upon his guaranty, but this sale to H, and delivery to him was upon the express condition that payment of the draft should be guaranteed by defendant, and the mistake in shipment would not constitute a waiver of this condition by plaintiff, for until there had been compliance with the condition, property in the horses did not pass to H.

*Held,* further, that upon failure of H to pay the draft or to furnish the guaranty plaintiff might retake possession, and the possession of defendant under the bill of sale from H would not prevent such taking.

*Held,* further, that as defendant had obtained from H both possession of the horses and such title as he had in them as security, he might be held to have waived any irregularity in the shipment, and be bound under his obligation, but even in such case, plaintiff might properly retake possession, for defendant having repudiated his contract, plaintiff was at liberty to treat it as abandoned and the contract of sale which was conditioned upon it, as rescinded.

REPLEVIN. Heard on exceptions of plaintiff and sustained.

SWEETLAND, J. This is an action of replevin to recover possession of twenty-nine horses alleged to have been unlawfully taken and detained by the defendant.

The case was tried before a justice of the Superior Court sitting with a jury. The following facts appeared in the evidence presented by the plaintiff at said trial. The plaintiff corporation is a dealer in horses in Indianapolis in the State of Indiana. One Peter Hicks is a dealer in horses in East Providence in this State. In the autumn of 1909, said Hicks made three visits to Indianapolis for the purpose of buying horses from the plaintiff. On each visit said Hicks purchased of the plaintiff a carload of horses. The first two carloads were shipped from Indianapolis to Providence in the name of said Hicks and it is admitted that the defendant Hennessey, a resident of this State, guaranteed the payment therefor. On November 10, 1909, when the plaintiff was preparing to ship the third carload of horses to Providence the following telegram was sent by the plaintiff to the defendant: *"James Hennessy Providence R. I. Hicks had good load bought worth the money if you will stand for this load we will make other arrangements too late to do it this load answer quick can bill them to you if you say so Blair Baker Horse Co."* To this the defendant replied by telegram as follows: *"November 10 1909. To Blair Baker Horse Co. Indianapolis Ind. You can ship horses in my name. James Hennessy."* The plaintiff then sent the following telegram to the defendant: *"Indianapolis Ind. November 10 James Hennessy care Laundry Providence. If we ship horses in your name will you guarantee draft answer quick Blair Baker Horse Co.,"* to which the defendant replied by telegram: *"November 10 1909 Blair Baker Horse Co. Indianapolis Ind. I will guarantee Draft. James Hennessy."*

(1)   The officer of the plaintiff, who conducted the transaction for the plaintiff, intended to ship said carload of horses in

the name of the defendant. Through some error, which is not fully explained, the horses were shipped in the name of Mr. Hicks. This mistake was unknown to said officer of the plaintiff until about two weeks later when he came to Providence and was informed of it by the attorney of the defendant. Mr. Hicks knew that the horses were to be shipped in the name of Mr. Hennessey, and believed that they were so shipped until the horses arrived in Providence. Immediately upon the return of Hicks from his third visit to Indianapolis, before it was known by Mr. Hicks or the defendant that the horses had not been shipped in the name of the defendant, Mr. Hicks, at the request of the defendant, executed and delivered to the defendant, a bill of sale of the horses that were then in the barn of Mr. Hicks, and also the horses included in said third shipment, which had not been unloaded at that time. This bill of sale was given to the defendant without the payment of money by the defendant to Mr. Hicks; and, though not fully explained in the testimony, appears to have been given as security for the obligation which the defendant had incurred by reason of his guaranty of payment for said carloads of horses, including the third. After the execution of said bill of sale the defendant and Mr. Hicks went together to the freight yard and there learned for the first time that the third shipment had been made in the name of Mr. Hicks. Mr. Hicks paid the express charges upon said horses and at once turned them over to the defendant, who took possession of them. About two weeks later said officer of the plaintiff came to Providence. At that time Mr. Hicks was unable to pay the draft for said third shipment of horses; the defendant disavowed his contract of guaranty as to said third shipment, and claimed that he was under no obligation to pay the draft. The plaintiff at once sought to rescind the contract for the sale of the horses included in the third shipment, and brought this action to recover possession of said horses, which were then held by the defendant.

In the trial of said case at the conclusion of the plaintiff's testimony the justice presiding nonsuited the plaintiff. The case is before us upon the plaintiff's exception to that ruling of said justice. The ground upon which the action of said justice was based does not appear in the transcript. The defendant has urged before us that in the circumstances of the case the plaintiff did not have the right to rescind the contract, and we presume that it was upon this ground that the justice nonsuited the plaintiff.

It was claimed by the defendant in an interview between himself, his attorney and the officer of the plaintiff, before the commencement of this suit, that he was not bound on his guaranty, because the third shipment was not made in his name. The defendant makes the same claim before us. If this contention of the defendant be conceded, the plaintiff had the undoubted right to rescind the sale and resume possession of said horses. It is clear that the horses were sold to Hicks and not to the defendant. The arrangement that the same should be shipped in the name of the defendant was for the security of the defendant upon his contract to guarantee the payment of the draft by Mr. Hicks. The sale to Mr. Hicks, however, and the delivery to him was upon the express condition that the payment of the draft should be guaranteed by the defendant. The mistake in shipment, which from the testimony appeared to have been caused, probably, by the unintentional act of Mr. Hicks, would not constitute a waiver of this condition by the plaintiff. Until there had been a compliance with this condition, property in the horses did not pass to Mr. Hicks. Upon the failure of said Hicks to pay the draft drawn upon him, or to furnish the guaranty agreed upon, the plaintiff might again take possession of the horses. The possession of the defendant under the bill of sale, given as before described, was no obstacle to the exercise of the plaintiff's right to repossess itself. *Whitwell* v. *Vincent,* 4 Pick. 449; *Tyler* v. *Freeman,* 3 Cush. 261; *Silsby* v. *Railroad,* 176 Mass. 158.

Our conclusion would be the same if it should be held that the defendant was legally bound upon the guaranty, notwithstanding the manner of shipment. The shipment in the name of the defendant, which had been arranged between the parties, was solely for the protection of the defendant. He was to be given possession of the horses that he might have security for his obligation under the guaranty. Before it was known by him that there had been a mistake in shipment, for further security, he obtained a transfer to himself of any title that said Hicks had in the horses. After he learned of the mistake, he accepted a delivery of the horses immediately upon their arrival in Providence, and obtained both the possession and the title of Mr. Hicks as security for his obligation. In these circumstances he may be held to have waived any irregularity in the method of shipment and to be bound by his said obligation. If this be the legal effect of the transaction, in the circumstances of the case, the defendant cannot now object to the act of the plaintiff in repossessing itself of said horses. For at the interview in Providence between himself and the plaintiff's officer the defendant repudiated his contract and, at least as far as the defendant was concerned, the plaintiff was at liberty to treat the contract of guaranty as abandoned, and the contract of sale, which was conditioned upon it, as rescinded, and to retake the horses.

We are therefor of the opinion that, whether the defendant was or was not legally bound on his agreement to guarantee the payment of said draft, upon the facts as presented in the plaintiff's evidence the nonsuit of the plaintiff was erroneous.

The case is remitted to the Superior Court for a new trial.

*Bliss & Walsh*, for plaintiff.

*Waterman & Greenlaw*, for defendant.

*Charles E. Tilley*, of counsel.